## Akers v. Smiley.

(Decided October 18, 1929.)

J. B. CLARKE and O. C. HALL for appellant.

FERGUSON & SHORT and A. F. CHILDERS for appellee.

130

Opinion of the Court by Judge Dietzman—Affirming.

At the primary election held on August 3, 1929, J. N. Harris, the appellant, Akers, and the appellee, Smiley, were all candidates for the Republican nomination for county clerk of Floyd county. Smiley receiving the most votes on the face of the returns, was, in due course of time, awarded the certificate of nomination, whereupon Akers brought this contest suit against Smiley and Harris in which he averred that both Smiley and Harris had violated the provisions of the Corrupt Practice Act (Ky. Stats., sec. 1565b1 et seq.) but that he had not, for which reason they were not, and he was, entitled to the certificate of nomination. Ky. Stats., sec. 1565b11. Harris, though duly served with notice of this contest, filed no answer, but Smiley did, in which he denied that he had violated the Corrupt Practice Act and asserted by way of counter contest that Akers had. A reply traversing this counter contest made up the issues. The court found that both the appellant and appellee had violated the Corrupt Practice Act and that, inasmuch as Harris had been charged with such violation and had failed to deny it, judgment against him would have to go by default. It therefore declared that none of the three candidates was entitled to the certificate of nomination. From that judgment Akers appeals.

The appellee concedes in his brief that he was guilty of violating the Corrupt Practice Act. It is also conceded by appellant that, if the testimony of Isaac Moles, Walter Smith, and Darrell Stratton is to be believed, it was established that the appellant had also violated the Corrupt Practice Act. It is earnestly insisted, however, that no credence should be given to these three witnesses. In substance, they testified that they had seen appellant writing out "tickets" which he would give to voters at the Betsy Lane precinct, and, after they had entered the polls and voted, he would, on their exit, hand them something folded in his hand. It was proven by unimpeached testimony that at this precinct voters would show to the election officers tickets, that is, paper with the names of appellant, Jack Owsley, and Mallie Conn (the latter two being candidates for nominations for offices other than that of county clerk) written upon it, and would indicate their desire to vote for these names. Indeed there was

open voting for these names at this precinct. Smith and Stratton also testify that appellant gave each of them a sum of money to vote for this ticket. Smith also testified that appellant gave him a sum of money to get others to vote for him. Both Smith and Stratton testify that appellant's mother-in-law, Mrs. Rhoda Howell, was buying or attempting to buy votes that day. They admitted that they did not know Mrs. Howell, but undertook to describe her. The description they gave fitted her. Appellant is correct when he says that the testimony of Moles is very unsatisfactory. Moles admitted that he could neither read nor write. Despite this he claimed to have seen and read the names of appellant, Owsley, and Conn on the tickets to which we have referred. A reading of his testimony does not carry conviction of its verity. But the testimony of Smith and Stratton does not suffer the same infirmity. True it is that they admit taking money for their votes, and Smith does not seem to have scrupled to take all he could get for the exercise of his franchise. But they were not materially shakened on cross-examination. Appellant in rebuttal denied the facts testified to by these three witnesses as did his mother-in-law, and his brother-in-law, Kermit Howell. That they were interested witnesses is obvious. Appellant also undertakes to discredit the testimony of Smith and Stratton by a nice calculation of the time he spent at the Betsy Lane precinct; but fairly read, the time which these witnesses say he spent at this precinct afforded him opportunity to do the things they say he did. The evidence of his witness, John S. Layne, who as a notary public took an affidavit from Stratton to the effect that Stratton had not told the truth when he testified against appellant, carries no weight. If Layne was not drunk when he testified, as he says he was not, he certainly was sadly muddled and forgetful of the details and even principal facts surrounding the taking of this affidavit which occurred but a few hours before he testified in this case. Further, his testimony strongly indicates that some one got Stratton drunk before his affidavit was taken. Such things are not conducive to confidence in appellant's cause. When we give to the opinion of the Chancellor who tried this case the weight due it, see Duff v. Salyers, 220 Ky. 546, 295 S. W. 871, we cannot say, in view of all the facts and circumstances adduced in this record, that it is erroneous.

The judgment of the lower court is therefore affirmed.